IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10CR3089 |
| | ) | |
| v. | ) | |
| | ) | |
| REGINA LYNN LEONARD, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

On June 24, 2013, Regina Lynn Leonard filed a Motion to Vacate under 28 U.S.C. § 2255. (Filing no. 156.[1]) The motion appears to be timely. After initial review of the substance of the motion, I deny it.[2] Frankly, the motion is frivolous.

## *I. BACKGROUND*

Leonard was charged with a drug conspiracy primarily involving methamphetamine. John Vanderslice, an extremely competent and zealous Assistant Federal Public Defender was

---

[1]To obtain the sequentially numbered blue PDF page headers in CM/ECF, access CM/ECF directly, open a CM/ECF screen and then select and click on the relevant filing number in the CM/ECF docket sheet. If one clicks on the hyperlink to the filing number in this opinion, the hyperlink will take the reader to that filing but the sequentially numbered blue PDF page headers created by CM/ECF will not be displayed.

[2]Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

appointed to represent her. As it turned out, Leonard was a most difficult client.

Leonard was 47 at the time of the prosecution. Among a host of other problems, she suffered from a major and recurrent depressive disorder and a borderline personality disorder characterized by a pervasive pattern of instability regarding relationships. She was markedly impulsive. For much of her adult life, Leonard had supplemented her income by selling drugs. She was dependent upon opiates, amphetamine, cannabis, and cocaine. (E.g., Filing no. 55 (Forensic Evaluation, Federal Medical Center Carswell).)

She told the evaluators that she fully understood Vanderslice during their conferences and she knew how to contact him if need be. But she also told the evaluators that: "We don't get along. I don't agree with the way he wants to fight my case." (*Id.* at CM/ECF p. 8.) The evaluators concluded that she was competent to stand trial, but added this:

> She did, however, demonstrate significant dislike for her attorney and she maintains that she is being treated unfairly by the United States Government because they left her with "no choice but to use and sell in order to make ends meet and provide for her children." This view is likely to result in outbursts of anger and lack of cooperation with her attorney; however, it is purely volitional and not the result of a mental disease or defect.

(*Id.* at CM/ECF p. 10.)

Upon her return from Carswell, Leonard orally moved for the appointment of a new lawyer. Magistrate Judge Zwart granted her request. Korey Reiman was appointed to represent her.

Like Vanderslice, Reiman is a very experienced and zealous criminal defense lawyer. We frequently appoint Reiman in cases where the client is exceptionally difficult because he is unusually empathetic while still being able to maintain appropriate professional independence.

Reiman got Leonard released from detention and into a specialized treatment program. After a failed plea attempt, the case ultimately went to trial. The jury returned a verdict

finding Leonard guilty of a methamphetamine conspiracy and holding her accountable for 500 grams or more of that substance. (Filing no. 111.[3]) Refusing to vary downward due to Leonard's mental health problems and long term drug addiction as recommended by the probation officer and as urged by Reiman, I sentenced Leonard to the low-end of the Guidelines or 151 months in prison. Leonard prosecuted an appeal, and Reiman argued that the evidence was insufficient and that my sentence was substantively unreasonable. The Eighth Circuit disagreed, and affirmed. (Filing no. 151.)

The foregoing is a much abbreviated overview. Additional facts will be discussed, if necessary.

## II. DISCUSSION

As indicated earlier, this motion is frivolous. As a result, I will only briefly discuss each claim. There is no need to make this opinion longer by setting forth the law on ineffective assistance of counsel claims. That law is well understood.

Claim one alleges that Reiman was ineffective because he did not negotiate a favorable plea agreement with the government. However, the record reflects that Reiman did negotiate with the government and he did set the matter for a plea (filing no. 62 and filing no. 63), but when the time came for the plea hearing Reiman told Judge Zwart that no plea agreement acceptable to Leonard could be reached and Leonard specifically told Judge Zwart that she did not want to plead guilty. (Filing no. 75 at tape counter 00:43 through 1:21.) Leonard does not explain what type of plea agreement would have been acceptable to her or how Reiman violated professional standards by failing to achieve such a result. After all, the evidence against Leonard was overwhelming as the Court of Appeals found (filing no. 151 at CM/ECF pp. 2-3) and the government had little or no incentive to bargain.

---

[3]Although the government also claimed that the conspiracy involved cocaine and marijuana, the jury found that the conspiracy, as it pertained to Leonard, did not involve those drugs. (Filing no. 111 at CM/ECF pp. 2-3.)

3

Claim two is a hodgepodge of assertions. Initially, Leonard claims that Reiman failed to investigate whether the government could prove 500 or more grams of methamphetamine. Again, that claim is belied by the fact that the jury found that Leonard was responsible for that quantity beyond a reasonable doubt. Besides, she does not even claim, let alone show, that the result would have been different had Reiman done something different. Next, she asserts "on information and belief" that Reiman "did not communicate with me in a timely manner the substance and specifics of [a] plea offer from the AUSA." She wholly fails to allege any facts in support of her rank speculation. Nor is there the slightest reason to think that Leonard would have accepted a deal. Lastly, she complains that Reiman did not ask for a bill of particulars. Again, she fails to explain how that would have made any difference. In passing, I should also note that since the government instituted an "open file" discovery approach years ago, I have not seen a bill of particulars in a drug case for a very long time.

Claim three is emblematic of Leonard's approach to life. She alleges that Reiman would not let her testify. However, the record reflects that she elected not to testify herself. (Filing no. 144 at CM/ECF p. 84.) She alleges that Reiman failed to attack the credibility of the nine cooperating individuals who testified against her. Again, the record disproves her claim. (E.g., filing no. 143 at CM/ECF pp. 24-25 (Reiman forcing Cunningham to admit that during the relevant time frame he was a paranoid schizophrenic who was hearing voices).)

Claim four alleges that Reiman did not "refute the statutory presumption of a mandatory minimum sentence" but the jury found beyond a reasonable doubt that Leonard was responsible for 500 grams or more of methamphetamine (filing no. 111 at CM/ECF p. 2) and the presentence report calculated, conservatively, that Leonard was responsible for more than 500 grams but less than 1.5 kilograms of methamphetamine for a base offense level of 32. (Filing no. 131 at CM/ECF pp. 8-9 & ¶¶ 38, 45.) Leonard does not explain what Reiman should have done to "refute" the drug quantity attributed to her or how she was prejudiced by his alleged unprofessional conduct.

In summary, Leonard's case is a sad one. She freely admitted that she sold drugs to support herself, but she blamed the government and said that she had "no choice but to use and sell in order to make ends meet and provide for her family." She did not like her first lawyer, an experienced and zealous federal public defender, and she not "agree with the way

he wants to fight my case." She now attacks her second lawyer, Reiman, another very experienced and zealous advocate. The fact is that Reiman performed as well or better than most under very difficult circumstances and Leonard has failed to show any prejudice from any action or inaction attributable to him. For once in her life, Leonard will be held responsible for her own actions.

IT IS ORDERED the Motion to Vacate under 28 U.S.C. § 2255 (filing no. 156) is denied and dismissed with prejudice. A separate judgment will be issued.

August 6, 2013.                    BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.